Andrew Shamis
Arizona Bar No. 037343
*ashamis@shamisgentile.com*
**SHAMIS & GENTILE, P.A.**
14 NE 1st Ave, Suite 705
Miami, FL 33132
Telephone: (305) 479-2299

[Additional Counsel in Signature Block]

*Attorney for Plaintiffs and Proposed Class*

## UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

| | |
|---|---|
| KARLO PERALTA and RAVEN JACKSON, individually, and on behalf of all others similarly situated, | Case: |
| | **CLASS ACTION COMPLAINT** |
| Plaintiffs, | |
| vs. | DEMAND FOR JURY TRIAL |
| BACKCHECKED LLC, | |
| Defendant. | |

Plaintiffs Karlo Peralta and Raven Jackson (collectively, "Plaintiffs"), individually, and on behalf of all others similarly situated, bring this Class Action Complaint ("Complaint") against Defendant BackChecked LLC ("Defendant"), to obtain damages, restitution, and injunctive relief for the Class, as defined below, from Defendant. Plaintiffs make the following allegations on information and belief, except as to their own actions, which are made on personal knowledge, the investigation of counsel, and the facts that are a matter of public record.

### INTRODUCTION

1.      This class action arises out of the recent targeted attack and data breach ("Data Breach") on Defendant's network that resulted in unauthorized access to the highly sensitive data. As a result of the Data Breach, Class Members (defined *infra*) suffered ascertainable losses in the form of the benefit of their bargain, out-of-pocket expenses, and the value of their time reasonably incurred to remedy or mitigate the effects of the attack, emotional distress, and the present risk of

1    imminent harm caused by the compromise of their sensitive personal information.

2        2.    The specific information compromised in the Data Breach includes, but is not limited

3    to, personally identifiable information ("PII"), such as names, dates of birth, driver's license numbers,

4    and Social Security numbers.

5        3.    Defendant is a background screening platform.

6        4.    Plaintiffs and Class Members provided their PII to Defendant's customers and/or

7    agents, which, in turn, provided the PII to Defendant, a background screening platform.

8        5.    Defendant stored the PII, unencrypted, in an Internet-accessible environment on its

9    network, from which unauthorized actors used an extraction tool to retrieve sensitive PII belonging

10    to Plaintiffs and Class Members in September, 2024.

11        6.    Plaintiffs' and Class Members' PII—which were entrusted to Defendant, its officials,

12    and agents—were compromised and unlawfully accessed due to the Data Breach.

13        7.    Plaintiffs bring this class action lawsuit on behalf of those similarly situated to address

14    Defendant's inadequate safeguarding of Plaintiffs' and Class Members' PII that Defendant collected

15    and maintained, and for Defendant's failure to provide timely and adequate notice to Plaintiffs and

16    other Class Members that their PII had been subject to the unauthorized access of an unknown,

17    unauthorized party.

18        8.    Defendant maintained the PII in a negligent and/or reckless manner. In particular, the

19    PII was maintained on Defendant's computer system and network in a condition vulnerable to

20    cyberattacks. Upon information and belief, the mechanism of the cyberattack and potential for

21    improper disclosure of Plaintiffs' and Class Members' PII was a known risk to Defendant, and thus

22    Defendant was on notice that failing to take steps necessary to secure the PII from those risks left

23    that property in a dangerous condition.

24        9.    In addition, upon information and belief, Defendant and its employees failed to

25    properly monitor the computer network, IT systems, and integrated service that housed Plaintiffs'

26    and Class Members' PII.

27        10.    Plaintiffs' and Class Members' identities are now at risk because of Defendant's

28

CLASS ACTION COMPLAINT
2

1    negligent conduct because the PII that Defendant collected and maintained is now in the hands of
2    malicious cybercriminals. The risks to Plaintiffs and Class Members will remain for their respective
3    lifetimes.

4          11.    Defendant failed to provide timely, accurate and adequate notice to Plaintiffs and
5    Class Members. Plaintiffs' and Class Members' knowledge about the PII Defendant lost, as well as
6    precisely what type of information was unencrypted and in the possession of unknown third parties,
7    was unreasonably delayed by Defendant's failure to warn impacted persons immediately upon
8    learning of the Data Breach.

9          12.    Armed with the PII accessed in the Data Breach, data thieves can commit a variety of
10   crimes including opening new financial accounts in Class Members' names, taking out loans in Class
11   Members' names, using Class Members' names to obtain medical services, using Class Members'
12   information to target other phishing and hacking intrusions using Class Members' information to
13   obtain government benefits, filing fraudulent tax returns using Class Members' information,
14   obtaining driver's licenses in Class Members' names but with another person's photograph, and
15   giving false information to police during an arrest.

16         13.    As a result of the Data Breach, Plaintiff and Class Members have been exposed to a
17   present, heightened and imminent risk of fraud and identity theft. Plaintiff and Class Members must
18   now closely monitor their financial accounts to guard against identity theft for the rest of their lives.

19         14.    Plaintiffs and Class Members may also incur out of pocket costs for purchasing credit
20   monitoring services, credit freezes, credit reports, or other protective measures to deter and detect
21   identity theft.

22         15.    By their Complaint, Plaintiffs seek to remedy these harms on behalf of themselves
23   and all similarly situated individuals whose PII was accessed during the Data Breach.

24         16.    Accordingly, Plaintiffs bring claims on behalf of themselves and the Class for:
25   negligence, breach of implied contract, breach of third-party beneficiary contract, unjust enrichment,
26   violations of the California Unfair Competition Law, violation of the California Consumer Privacy
27   Act, violation of the California Customer Records Act and declaratory judgment and injunctive relief.

28

CLASS ACTION COMPLAINT
3

Through these claims, Plaintiffs seek, *inter alia*, damages and injunctive relief, including improvements to Defendant's data security systems and integrated services, future annual audits, and adequate credit monitoring services.

**PARTIES**

17.    Plaintiff Peralta is a natural person and citizen of Fountain Valley, California.

18.    Plaintiff Jackson is a natural person and citizen of Stockbridge, Georgia.

19.    Defendant is a limited liability company formed in Arizona with its principal place of business located at 5916 E. Arcadia Lane, Phoenix, Arizona 85018. According to the Arizona Corporate Commission, Defendant's members are John Kloos and Randy Cummings, who, upon information and belief, are both citizens of Arizona.

**JURISDICTION AND VENUE**

20.    This Court has original jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2) because at least one member of the putative Class, as defined below, are citizens of a different state than Defendant, and the amount in controversy exceeds $5 million exclusive of interest and costs.

21.    This Court has personal jurisdiction over Defendant because it and/or its parents or affiliates are headquartered in this District and Defendant conducts substantial business in Arizona and this District.

22.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because Defendant's principal places of business is in this District and a substantial part of the events, acts, and omissions giving rise to Plaintiffs' claims occurred in this District.

**BACKGROUND FACTS**

23.    Defendant is an independent software company dedicated, exclusively, to the task of providing state of the art systems technology to growing background screening firms.[1]

24.    Plaintiffs and Class Members provided their PII to Defendant's customers and/or agents, including but not limited to their names, dates of birth, driver's license numbers, Social

---

[1] *See* https://www.backchecked.com/aboutus.html.

CLASS ACTION COMPLAINT
4

Security numbers, and other information that Defendant may deem necessary to provide its services.

25.    Defendant's customers and/or agents provided Plaintiffs' and Class Members' PII to Defendant in the ordinary course of business.

26.    Plaintiffs and Class Members directly or indirectly entrusted Defendant with sensitive and confidential PII, which includes information that is static, does not change, and can be used to commit myriad financial crimes.

27.    Because of the highly sensitive and personal nature of the information Defendant acquires, stores, and has access to, Defendant, upon information and belief, promised to, among other things: keep PII private; comply with industry standards related to data security and PII; inform individuals of its legal duties and comply with all federal and state laws protecting PII; only use and release PII for reasons that relate to medical care and treatment; and provide adequate notice to impacted individuals if their PII is disclosed without authorization.

28.    By obtaining, collecting, using, and deriving a benefit from Plaintiffs' and Class Members' PII, Defendant assumed legal and equitable duties and knew or should have known that it was responsible for protecting Plaintiffs' and Class Members' PII from unauthorized disclosure.

29.    Plaintiffs and Class Members have taken reasonable steps to maintain the confidentiality of their PII.

30.    Plaintiffs and the Class Members relied on Defendant to implement and follow adequate data security policies and protocols, to keep their PII confidential and securely maintained, to use such PII solely for business purposes, and to prevent the unauthorized disclosures of the PII.

**A.    Defendant Fails to Safeguard Consumer PII.**

31.    On or about December 13, 2024, Certified Employment Screening Inc. d/b/a Americhek ("Americhek"), one of Defendant's customers and/or agents, began sending Notice of Data Security Incident letters ("Notice Letters"), notifying its customers of the Data Breach:

> **What Happened:** BackChecked recently discovered unauthorized access to its digital systems. Upon investigating, BackChecked determined that an unauthorized individual accessed its systems on September 26, 2024, and may have obtained information from certain applicants' records. On October 29, 2024, BackChecked notified Americhek that a data security incident had occurred and that it had potentially impacted certain applicant information. Americhek immediately began assessing the scope of the

potentially impacted data. After a thorough review of the data, Americhek determined on November 21, 2024, that your personal information may have been impacted by this incident.

**What Information Was Involved:** The personal information potentially impacted by this incident may have included your name, date of birth, driver's license number, and Social Security number.[2]

32.     To date, Defendant has not provided notice of the Data Breach to Plaintiffs and Class Members.

33.     Upon information and belief, the cyberattack was expressly designed to gain access to private and confidential data of specific individuals, including (among other things) the PII of Plaintiffs and the Class Members.

34.     Plaintiffs further believe their PII was likely subsequently sold on the dark web following the Data Breach, as that is the *modus operandi* of cybercriminals.

35.     Defendant had a duty to adopt reasonable measures to protect Plaintiffs' and Class Members' PII from involuntary disclosure to third parties.

36.     Because of the Data Breach, data thieves were able to gain access to Defendant's private systems on September 26, 2024, and were able to compromise, access, and acquire the protected PII of Plaintiffs and Class Members.

37.     Defendant had obligations created by contract, industry standards, common law, and its own promises and representations made to Plaintiffs and Class Members to keep their PII confidential and to protect them from unauthorized access and disclosure.

38.     Plaintiffs and the Class Members reasonably relied (directly or indirectly) on Defendant's sophistication to keep their sensitive PII confidential; to maintain proper system security; to use this information for business purposes only; and to make only authorized disclosures of their PII.

39.     Plaintiffs' and Class Members' unencrypted, unredacted PII was compromised due to Defendant's negligent and/or careless acts and omissions, and due to the utter failure to protect Class Members' PII. Criminal hackers obtained their PII because of its value in exploiting and stealing the

---

[2] *See, e.g.*, https://oag.ca.gov/system/files/Americhek%20-%20Regulatory%20Notification%20Packet%20%28CA%29_0.pdf.

identities of Plaintiffs and Class Members. The risks to Plaintiffs and Class Members will remain for their respective lifetimes.

40. Thus, on information and belief, Plaintiffs' and Class Members' PII has already been published—or will be published imminently—on the dark web by cybercriminals.

**B. Defendant was on Notice of the Foreseeable Risk of the Data Breach.**

41. In light of recent high profile data breaches, Defendant knew or should have known the electronic records and PII it maintained would be targeted by cybercriminals and ransomware attack groups.

42. Defendant knew or should have known that these attacks were common and foreseeable.

43. In 2021, a record 1,862 data breaches occurred, resulting in approximately 293,927,708 sensitive records being exposed, a 68% increase from 2020.[3] The 330 reported breaches reported in 2021 exposed nearly 30 million sensitive records (28,045,658), compared to only 306 breaches that exposed nearly 10 million sensitive records (9,700,238) in 2020.[4]

44. Therefore, the increase in such attacks, and the attendant risk of future attacks, was widely known to the public and to anyone in Defendant's industry, including Defendant.

**C. Defendant Fails to Comply with FTC Guidelines.**

45. The Federal Trade Commission ("FTC") has promulgated numerous guides for businesses which highlight the importance of implementing reasonable data security practices. According to the FTC, the need for data security should be factored into all business decision-making.

46. In 2016, the FTC updated its publication, *Protecting Personal Information: A Guide for Business*, which established cyber-security guidelines for businesses. The guidelines note that businesses should protect the personal customer information that they keep; properly dispose of personal information that is no longer needed; encrypt information stored on computer networks;

---

[3] *See* 2021 Data Breach Annual Report (ITRC, Jan. 2022) (available at https://notified.idtheftcenter.org/s/), at 6.
[4] *Id.*

understand its network's vulnerabilities; and implement policies to correct any security problems.[5] The guidelines also recommend that businesses use an intrusion detection system to expose a breach as soon as it occurs; monitor all incoming traffic for activity indicating someone is attempting to hack the system; watch for large amounts of data being transmitted from the system; and have a response plan ready in the event of a breach.[6]

47.    The FTC further recommends that companies not maintain PII longer than is needed for authorization of a transaction; limit access to sensitive data; require complex passwords to be used on networks; use industry-tested methods for security; monitor for suspicious activity on the network; and verify that third-party service providers have implemented reasonable security measures.

48.    The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect customer data, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the FTC Act ("FTCA"), 15 U.S.C. § 45. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

49.    These FTC enforcement actions include actions against entities like Defendant.

50.    Defendant failed to properly implement basic data security practices.

51.    Defendant's failure to employ reasonable and appropriate measures to protect against unauthorized access to customers and other impacted individuals' PII constitutes an unfair act or practice prohibited by Section 5 of the FTCA, 15 U.S.C. § 45.

52.    Defendant was at all times fully aware of its obligations to protect the PII. Defendant was also aware of the significant repercussions that would result from its failure to do so.

**D.    Defendant Fails to Comply with Industry Standards.**

53.    Several best practices have been identified that at a minimum should be implemented by companies storing sensitive PII like Defendant, including but not limited to: educating all

---

[5] *Protecting Personal Information: A Guide for Business*, Federal Trade Commission (2016). Available at https://www.ftc.gov/system/files/documents/plain-language/pdf-0136_proteting-personal-information.pdf (last visited May 30, 2024).
[6] *Id.*

employees; strong passwords; multi-layer security, including firewalls, anti-virus, and anti-malware software; encryption, making data unreadable without a key; multi-factor authentication; backup data; and limiting which employees can access sensitive data.

54.     Other best cybersecurity practices that are standard include installing appropriate malware detection software; monitoring and limiting the network ports; protecting web browsers and email management systems; setting up network systems such as firewalls, switches and routers; monitoring and protection of physical security systems; protection against any possible communication system; training staff regarding critical points.

55.     Defendant failed to meet the minimum standards of any of the following frameworks: the NIST Cybersecurity Framework Version 1.1 (including without limitation PR.AC-1, PR.AC-3, PR.AC-4, PR.AC-5, PR.AC-6, PR.AC-7, PR.AT-1, PR.DS-1, PR.DS-5, PR.PT-1, PR.PT-3, DE.CM-1, DE.CM-4, DE.CM-7, DE.CM-8, and RS.CO-2), and the Center for Internet Security's Critical Security Controls (CIS CSC), which are all established standards in reasonable cybersecurity readiness.

56.     These foregoing frameworks are existing and applicable industry standards, and Defendant failed to comply with these accepted standards, thereby opening the door to the cyber incident and causing the Data Breach.

**E.     Defendant's Breach**

57.     Defendant breached its obligations to Plaintiffs and Class Members and/or was otherwise negligent and reckless because it failed to properly maintain and safeguard its computer systems. Defendant's unlawful conduct includes, but is not limited to, the following acts and/or omissions:

        a.     failing to maintain an adequate data security system to reduce the risk of data breaches and cyber-attacks;

        b.     failing to adequately protect PII;

        c.     failing to properly monitor its own data security systems for existing intrusions;

d.     failing to ensure the confidentiality and integrity of electronic PII it created, received, maintained, and/or transmitted;

e.     failing to implement technical policies and procedures for electronic information systems that maintain electronic PII to allow access only to those persons or software programs that have been granted access rights;

f.     failing to implement policies and procedures to prevent, detect, contain, and correct security violations;

g.     failing to implement procedures to review records of information system activity regularly, such as audit logs, access reports, and security incident tracking reports;

h.     failing to protect against reasonably anticipated threats or hazards to the security or integrity of electronic PII;

i.     failing to train all members of their workforces effectively on the policies and procedures regarding PII;

j.     failing to render the electronic PII it maintained unusable, unreadable, or indecipherable to unauthorized individuals;

k.     failing to comply with FTC guidelines for cybersecurity, in violation of Section 5 of the FTCA;

l.     failing to adhere to industry standards for cybersecurity as discussed above; and,

m.     otherwise breaching their duties and obligations to protect Plaintiffs' and Class Members' PII.

58.     Defendant negligently and unlawfully failed to safeguard Plaintiffs' and Class Members' PII by allowing cyberthieves to access its computer systems, which provided unauthorized actors with unsecured and unencrypted PII.

59.     Accordingly, as outlined below, Plaintiffs and Class Members now face a present, increased risk of fraud and identity theft. In addition, Plaintiffs and the Class Members also lost the

benefit of the bargain they made with Defendant.

**F.    Data Breaches Cause Disruption and Increased Risk of Fraud and Identity Theft.**

60.    Cyberattacks and data breaches at companies like Defendant are especially problematic because they can negatively impact the overall daily lives of individuals affected by the attack.

61.    The United States Government Accountability Office released a report in 2007 regarding data breaches ("GAO Report") in which it noted that victims of identity theft will face "substantial costs and time to repair the damage to their good name and credit record."[7]

62.    That is because any victim of a data breach is exposed to serious ramifications regardless of the nature of the data. Indeed, the reason criminals steal personally identifiable information is to monetize it. They do this by selling the spoils of their cyberattacks on the black market to identity thieves who desire to extort and harass victims, take over victims' identities in order to engage in illegal financial transactions under the victims' names. Because a person's identity is akin to a puzzle, the more accurate pieces of data an identity thief obtains about a person, the easier it is for the thief to take on the victim's identity, or otherwise harass or track the victim. For example, armed with just a name and date of birth, a data thief can utilize a hacking technique referred to as "social engineering" to obtain even more information about a victim's identity, such as a person's login credentials or Social Security number. Social engineering is a form of hacking whereby a data thief uses previously acquired information to manipulate individuals into disclosing additional confidential or personal information through means such as spam phone calls and text messages or phishing emails.

63.    The FTC recommends that identity theft victims take several steps to protect their personal and financial information after a data breach, including contacting one of the credit bureaus to place a fraud alert (consider an extended fraud alert that lasts for 7 years if someone steals their identity), reviewing their credit reports, contacting companies to remove fraudulent charges from

---

[7] *See Personal Information: Data Breaches Are Frequent, but Evidence of Resulting Identity Theft Is Limited; However, the Full Extent Is Unknown*, GAO-07-737, U.S. GOV. ACCOUNTING OFFICE, (2007) https://www.gao.gov/new.items/d07737.pdf.

their accounts, placing a credit freeze on their credit, and correcting their credit reports.[8]

64.    Identity thieves use stolen personal information such as Social Security numbers for a variety of crimes, including credit card fraud, phone or utilities fraud, and bank/finance fraud.

65.    Identity thieves can also use Social Security numbers to obtain a driver's license or official identification card in the victim's name but with the thief's picture; use the victim's name and Social Security number to obtain government benefits; or file a fraudulent tax return using the victim's information. In addition, identity thieves may obtain a job using the victim's Social Security number, rent a house or receive medical services in the victim's name, and may even give the victim's personal information to police during an arrest resulting in an arrest warrant being issued in the victim's name.

66.    Moreover, theft of PII is also gravely serious because PII is an extremely valuable property right.[9]

67.    Its value is axiomatic, considering the value of "big data" in corporate America and the fact that the consequences of cyber thefts include heavy prison sentences. Even this obvious risk to reward analysis illustrates beyond doubt that PII has considerable market value.

68.    It must also be noted there may be a substantial time lag – measured in years -- between when harm occurs and when it is discovered, and also between when PII is stolen and when it is used.

69.    According to the U.S. Government Accountability Office, which conducted a study regarding data breaches:

> [L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt

---

[8] *See IdentityTheft.gov*, FEDERAL TRADE COMMISSION, https://www.identitytheft.gov/Steps (last accessed May 30, 2024).

[9] *See, e.g.,* John T. Soma, et al, *Corporate Privacy Trend: The "Value" of Personally Identifiable Information ("PII") Equals the "Value" of Financial Assets*, 15 RICH. J.L. & TECH. 11, at *3-4 (2009) ("PII, which companies obtain at little cost, has quantifiable value that is rapidly reaching a level comparable to the value of traditional financial assets.") (citations omitted).

1    to measure the harm resulting from data breaches cannot necessarily rule out
all future harm.[10]

2    70.    PII is such a valuable commodity to identity-thieves that once the information has

3    been compromised, criminals often trade the information on the "cyber black-market" for years.

4    71.    There is a strong probability that entire batches of stolen information have been

5    dumped on the black market and are yet to be dumped on the black market, meaning Plaintiffs and

6    Class Members are at an increased risk of fraud and identity theft for many years into the future.

7    72.    Thus, Plaintiffs and Class Members must vigilantly monitor their financial and

8    medical accounts for many years to come.

9    73.    PII can sell for as much as $363 per record according to the Infosec Institute.[11] PII is

10   particularly valuable because criminals can use it to target victims with frauds and scams. Once PII

11   is stolen, fraudulent use of that information and damage to victims may continue for many years.

12   74.    For example, the Social Security Administration has warned that identity thieves can

13   use an individual's Social Security number to apply for additional credit lines.[12] Such fraud may go

14   undetected until debt collection calls commence months, or even years, later. Stolen Social Security

15   Numbers also make it possible for thieves to file fraudulent tax returns, file for unemployment

16   benefits, or apply for a job using a false identity.[13] Each of these fraudulent activities is difficult to

17   detect. An individual may not know that their Social Security Number was used to file for

18   unemployment benefits until law enforcement notifies the individual's employer of the suspected

19   fraud. Fraudulent tax returns are typically discovered only when an individual's authentic tax return

20   is rejected.

21   75.    Moreover, it is not an easy task to change or cancel a stolen Social Security number.

22   76.    An individual cannot obtain a new Social Security number without significant

23

24   [10] *Personal Information: Data Breaches Are Frequent, but Evidence of Resulting Identity Theft Is Limited; However, the Full Extent Is Unknown*, GAO-07-737, U.S. Gov. Accounting Office,

25   (2007) https://www.gao.gov/new.items/d07737.pdf.

26   [11] *See* Ashiq Ja, *Hackers Selling Healthcare Data in the Black Market*, Infosec (July 27, 2015), https://resources.infosecinstitute.com/topic/hackers-selling-healthcare-data-in-the-black-market/.

27   [12] *Identity Theft and Your Social Security Number*, Social Security Administration (2018) at 1, https://www.ssa.gov/pubs/EN-05-10064.pdf (last accessed May 30, 2024).

28   [13] *Id* at 4.

1    paperwork and evidence of actual misuse. Even then, a new Social Security number may not be

2    effective, as "[t]he credit bureaus and banks are able to link the new number very quickly to the old

3    number, so all of that old bad information is quickly inherited into the new Social Security number."[14]

4          77.    This data, as one would expect, demands a much higher price on the black market.

5    Martin Walter, senior director at cybersecurity firm RedSeal, explained, "[c]ompared to credit card

6    information, personally identifiable information and Social Security Numbers are worth more than

7    10x on the black market."[15]

8          78.    Defendant knew or should have known about these dangers and strengthened its data

9    and email handling systems accordingly. Defendant was put on notice of the substantial and

10   foreseeable risk of harm from a data breach, yet Defendant failed to properly prepare for that risk.

11   **G.    Plaintiffs' and Class Members' Damages**

12         79.    To date, Defendant has done nothing to provide Plaintiffs and the Class Members with

13   relief for the damages they have suffered as a result of the Data Breach.

14         80.    Plaintiffs and Class Members have been damaged by the compromise of their PII in

15   the Data Breach.

16         81.    Plaintiffs and Class Members' full names and Social Security numbers were

17   compromised in the Data Breach and are now in the hands of the cybercriminals who accessed

18   Defendant's software maintaining PII. This PII was acquired by some unauthorized, unidentified

19   third-party threat actor.

20         82.    Since being notified of the Data Breach, Plaintiffs have spent time dealing with the

21   impact of the Data Breach, valuable time Plaintiffs otherwise would have spent on other activities,

22   including but not limited to work and/or recreation.

23         83.    Due to the Data Breach, Plaintiffs anticipate spending considerable time and money

24

25   [14] Brian Naylor, *Victims of Social Security Number Theft Find It's Hard to Bounce Back*, NPR
26   (Feb. 9, 2015), http://www.npr.org/2015/02/09/384875839/data-stolen-by-anthem-s-hackers-has-millions-worrying-about-identity-theft.
27   [15] Tim Greene, *Anthem Hack: Personal Data Stolen Sells for 10x Price of Stolen Credit Card Numbers*, COMPUTER WORLD (Feb. 6, 2015), http://www.itworld.com/article/2880960/anthem-
28   hack-personal-data-stolen-sells-for-10x-price-of-stolen-credit-card-numbers.html.

on an ongoing basis trying to mitigate and address harms caused by the Data Breach. This includes changing passwords, cancelling credit and debit cards, and monitoring their accounts for fraudulent activity.

84.     Plaintiffs' PII was compromised as a direct and proximate result of the Data Breach.

85.     As a direct and proximate result of Defendant's conduct, Plaintiffs and Class Members have been placed at a present, imminent, immediate, and continuing increased risk of harm from fraud and identity theft.

86.     As a direct and proximate result of Defendant's conduct, Plaintiffs and Class Members have been forced to expend time dealing with the effects of the Data Breach.

87.     Plaintiffs and Class Members face substantial risk of out-of-pocket fraud losses such as loans opened in their names, medical services billed in their names, tax return fraud, utility bills opened in their names, credit card fraud, and similar identity theft.

88.     Plaintiffs and Class Members face substantial risk of being targeted for future phishing, data intrusion, and other illegal schemes based on their PII as potential fraudsters could use that information to more effectively target such schemes to Plaintiffs and Class Members.

89.     Plaintiffs and Class Members may also incur out-of-pocket costs for protective measures such as credit monitoring fees, credit report fees, credit freeze fees, and similar costs directly or indirectly related to the Data Breach.

90.     Plaintiffs and Class Members also suffered a loss of value of their PII when it was acquired by cyber thieves in the Data Breach. Numerous courts have recognized the propriety of loss of value damages in related cases.

91.     Plaintiffs and Class Members have spent and will continue to spend significant amounts of time to monitor their financial accounts and sensitive information for misuse.

92.     Plaintiffs and Class Members have suffered or will suffer actual injury as a direct result of the Data Breach. Many victims suffered ascertainable losses in the form of out-of-pocket expenses and the value of their time reasonably incurred to remedy or mitigate the effects of the Data Breach relating to:

a.   reviewing and monitoring sensitive accounts and finding fraudulent insurance claims, loans, and/or government benefits claims;

b.   purchasing credit monitoring and identity theft prevention;

c.   placing "freezes" and "alerts" with reporting agencies;

d.   spending time on the phone with or at financial institutions, healthcare providers, and/or government agencies to dispute unauthorized and fraudulent activity in their name;

e.   contacting financial institutions and closing or modifying financial accounts; and

f.   closely reviewing and monitoring Social Security numbers, medical insurance accounts, bank accounts, and credit reports for unauthorized activity for years to come.

93.    Moreover, Plaintiffs and Class Members have an interest in ensuring that their PII, which is believed to remain in the possession of Defendant, is protected from further breaches by the implementation of adequate security measures and safeguards, including but not limited to, making sure that the storage of data or documents containing PII is not accessible online and that access to such data is password protected.

94.    Further, as a result of Defendant's conduct, Plaintiffs and Class Members are forced to live with the anxiety that their PII may be disclosed to the entire world, thereby subjecting them to embarrassment and depriving them of any right to privacy whatsoever.

95.    As a direct and proximate result of Defendant's actions and inactions, Plaintiffs and Class Members have suffered anxiety, emotional distress, and loss of privacy, and are at an increased risk of future harm.

***Plaintiff Peralta's Experience***

96.    Plaintiff Peralta, through Defendant's customer and/or agent, provided his PII to Defendant as a condition of submitting an application for employment or tenancy.

97.    Plaintiff Peralta provided his PII to Defendant and trusted it would use reasonable

1    measures to protect it according to Defendant's internal policies, as well as state and federal law.

2        98.    Plaintiff Peralta is very careful about sharing his sensitive private information.

3    Plaintiff Peralta has never knowingly transmitted unencrypted sensitive PII over the internet or any

4    other unsecured source.

5        99.    Plaintiff Peralta first learned of the Data Breach after receiving a Notice Letter on or

6    about December 13, 2024, which advised that his PII was compromised in the Data Breach.

7        100.   As a result of the Data Breach, Plaintiff Peralta has been forced to spend time dealing

8    with and responding to the direct consequences of the Data Breach. This is uncompensated time that

9    has been lost forever and cannot be recaptured.

10       101.   Plaintiff Peralta has spent significant time and will continue to spend valuable hours

11   for the remainder of his life, that he otherwise would have spent on other activities, including but not

12   limited to work and/or recreation.

13       102.   Plaintiff Peralta suffered actual injury from having his PII compromised as a result of

14   the Data Breach including, but not limited to (a) damage to and diminution in the value of his PII, a

15   form of property that Defendant maintained belonging to Plaintiff Peralta; (b) violation of his privacy

16   rights; (c) the theft of his PII; and (d) present, imminent and impending injury arising from the

17   increased risk of identity theft and fraud.

18       103.   As a result of the Data Breach, Plaintiff Peralta has also suffered emotional distress

19   as a result of the release of his PII, which he believed would be protected from unauthorized access

20   and disclosure, including anxiety about unauthorized parties viewing, selling, and/or using his PII for

21   purposes of identity theft and fraud. Plaintiff Peralta is very concerned about identity theft and fraud,

22   as well as the consequences of such identity theft and fraud resulting from the Data Breach.

23       104.   As a result of the Data Breach, Plaintiff Peralta anticipates spending considerable time

24   and money on an ongoing basis to try to mitigate and address harms caused by the Data Breach. In

25   addition, Plaintiff Peralta will continue to be at present, imminent, and continued increased risk of

26   identity theft and fraud for the remainder of his life.

27       105.   Plaintiff Peralta has a continuing interest in ensuring that his PII, which, upon

28

information and belief, remains backed up in Defendant's possession, is protected, and safeguarded from future breaches.

***Plaintiff Jackson's Experience***

106.    Plaintiff Jackson, through Defendant's customer and/or agent, provided her PII to Defendant as a condition of submitting an application for employment or tenancy.

107.    Plaintiff Jackson provided her PII to Defendant and trusted it would use reasonable measures to protect it according to Defendant's internal policies, as well as state and federal law.

108.    Plaintiff Jackson is very careful about sharing her sensitive private information. Plaintiff Jackson has never knowingly transmitted unencrypted sensitive PII over the internet or any other unsecured source.

109.    Plaintiff Jackson first learned of the Data Breach after receiving a Notice Letter on or about December 13, 2024, which advised that her PII was compromised in the Data Breach.

110.    As a result of the Data Breach, Plaintiff Jackson has been forced to spend time dealing with and responding to the direct consequences of the Data Breach. This is uncompensated time that has been lost forever and cannot be recaptured.

111.    Plaintiff Jackson has spent significant time and will continue to spend valuable hours for the remainder of her life, that she otherwise would have spent on other activities, including but not limited to work and/or recreation.

112.    Plaintiff Jackson suffered actual injury from having her PII compromised as a result of the Data Breach including, but not limited to (a) damage to and diminution in the value of her PII, a form of property that Defendant maintained belonging to Plaintiff Jackson; (b) violation of her privacy rights; (c) the theft of her PII; and (d) present, imminent and impending injury arising from the increased risk of identity theft and fraud.

113.    As a result of the Data Breach, Plaintiff Jackson has also suffered emotional distress as a result of the release of her PII, which she believed would be protected from unauthorized access and disclosure, including anxiety about unauthorized parties viewing, selling, and/or using her PII for purposes of identity theft and fraud. Plaintiff Jackson is very concerned about identity theft and

fraud, as well as the consequences of such identity theft and fraud resulting from the Data Breach.

114.    As a result of the Data Breach, Plaintiff Jackson anticipates spending considerable time and money on an ongoing basis to try to mitigate and address harms caused by the Data Breach. In addition, Plaintiff Jackson will continue to be at present, imminent, and continued increased risk of identity theft and fraud for the remainder of her life.

115.    Plaintiff Jackson has a continuing interest in ensuring that her PII, which, upon information and belief, remains backed up in Defendant's possession, is protected, and safeguarded from future breaches.

**CLASS ACTION ALLEGATIONS**

116.    Plaintiffs bring this action on behalf of themselves and on behalf of all other persons similarly situated under Federal Rule of Civil Procedure 23.

117.    Plaintiffs propose the following Class and California Subclass (together, "Class"), subject to amendment as appropriate:

> National Class: All persons whose PII was compromised in the Data Breach, including all who were sent a Notice Letter ("National Class").

> California Subclass: All persons in the state of California whose PII was compromised in the Data Breach including all who were sent a Notice Letter ("California Subclass").

118.    Excluded from the Class are Defendant's officers, directors, and employees; any entity in which Defendant has a controlling interest; and the affiliates, legal representatives, attorneys, successors, heirs, and assigns of Defendant. Also excluded from the Class are members of the judiciary to whom this case is assigned, their families, and members of their staff.

119.    Plaintiffs reserve the right to amend or modify the Class definition or add a subclass as this case progresses.

120.    <u>Numerosity</u>. The members of the Class are so numerous that joinder of all of them is impracticable. While the exact number of Class Members is unknown to Plaintiffs at this time, based on information and belief, the Class consists of thousands of individuals whose sensitive data was compromised in the Data Breach.

121.  <u>Commonality</u>. There are questions of law and fact common to the Class, which predominate over any questions affecting only individual Class Members. These common questions of law and fact include, without limitation:

a.  if Defendant unlawfully used, maintained, lost, or disclosed Plaintiffs' and Class Members' PII;

b.  if Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

c.  if Defendant's data security systems prior to and during the Data Breach complied with applicable data security laws and regulations;

d.  if Defendant's data security systems prior to and during the Data Breach were consistent with industry standards;

e.  if Defendant owed a duty to Class Members to safeguard their PII;

f.  if Defendant breached its duty to Class Members to safeguard their PII;

g.  if Defendant knew or should have known that its data security systems and monitoring processes were deficient;

h.  if Defendant should have discovered the Data Breach sooner;

i.  if Plaintiffs and Class Members suffered legally cognizable damages as a result of Defendant's misconduct;

j.  if Defendant's conduct was negligent;

k.  if Defendant breached implied contracts with Plaintiffs and Class Members;

l.  if Defendant was unjustly enriched by unlawfully retaining a benefit conferred upon them by Plaintiffs and Class Members;

m.  if Defendant failed to provide notice of the Data Breach in a timely manner, and;

n.  if Plaintiff and Class Members are entitled to damages, punitive damages, treble damages, and/or injunctive relief.

122.    <u>Typicality</u>. Plaintiffs' claims are typical of those of other Class Members because Plaintiffs' PII, like that of every other Class Member, was compromised in the Data Breach.

123.    <u>Adequacy of Representation</u>. Plaintiffs will fairly and adequately represent and protect the interests of Class Members. Plaintiffs' Counsel are competent and experienced in litigating class actions.

124.    <u>Predominance</u>. Defendant has engaged in a common course of conduct toward Plaintiffs and Class Members, in that all the Plaintiffs' and Class Members' data was stored on the same computer system and unlawfully accessed in the same way. The common issues arising from Defendant's conduct affecting Class Members set out above predominate over any individualized issues. Adjudication of these common issues in a single action has important and desirable advantages of judicial economy.

125.    <u>Superiority</u>. A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Class treatment of common questions of law and fact is superior to multiple individual actions or piecemeal litigation. Absent a class action, most Class Members would likely find that the cost of litigating their individual claims is prohibitively high and would therefore have no effective remedy. The prosecution of separate actions by individual Class Members would create a risk of inconsistent or varying adjudications with respect to individual Class Members, which would establish incompatible standards of conduct for Defendant. In contrast, the conduct of this action as a Class action presents far fewer management difficulties, conserves judicial resources and the parties' resources, and protects the rights of each Class Member.

126.    Defendant has acted on grounds that apply generally to the Class as a whole, so that Class certification, injunctive relief, and corresponding declaratory relief are appropriate on a Class-wide basis.

127.    Likewise, particular issues under Federal Rule of Civil Procedure 23(c)(4) are appropriate for certification because such claims present only particular, common issues, the resolution of which would advance the disposition of this matter and the parties' interests therein. Such particular issues include, but are not limited to:

a.    if Defendant failed to timely notify the public of the Data Breach;

b.    if Defendant owed a legal duty to Plaintiffs and the Class to exercise due care in collecting, storing, and safeguarding their PII;

c.    if Defendant's security measures to protect their data systems were reasonable in light of best practices recommended by data security experts;

d.    if Defendant's failure to institute adequate protective security measures amounted to negligence;

e.    if Defendant failed to take commercially reasonable steps to safeguard consumer PII; and

f.    if adherence to FTC data security recommendations, and measures recommended by data security experts would have reasonably prevented the Data Breach.

128.    Finally, all members of the proposed Class are readily ascertainable. Defendant has access to Class Members' names and addresses affected by the Data Breach. Certain Class Members have already been preliminarily identified and sent notice of the Data Breach by Americhek.

**FIRST CAUSE OF ACTION**
**Negligence**
**(On Behalf of Plaintiffs and the Class)**

129.    Plaintiffs repeat and re-allege paragraphs 1 through 128 of this Complaint and incorporate them by reference herein.

130.    Plaintiffs and the Class entrusted Defendant with their PII on the premise and with the understanding that Defendant would safeguard their information, use their PII for admissions purposes only, and/or not disclose their PII to unauthorized third parties.

131.    Defendant has full knowledge of the sensitivity of the PII and the types of harm that Plaintiffs and the Class could and would suffer if the PII were wrongfully disclosed.

132.    By collecting and storing this data in their computer system and network, and sharing it and using it for commercial gain, Defendant owed a duty of care to use reasonable means to secure and safeguard their computer system—and Class Members' PII held within it—to prevent disclosure

of the information, and to safeguard the information from theft. Defendant's duty included a responsibility to implement processes by which it could detect a breach of their security systems in a reasonably expeditious period of time and to give prompt notice to those affected in the case of a data breach.

133.    Defendant owed a duty of care to Plaintiffs and Class Members to provide data security consistent with industry standards and other requirements discussed herein, and to ensure that their systems and networks, and the personnel responsible for them, adequately protected the PII.

134.    Defendant's duty of care to use reasonable security measures arose as a result of the special relationship that existed between Defendant and individuals who entrusted them with PII, which is recognized by laws and regulations, as well as common law. Defendant was in a superior position to ensure that their systems were sufficient to protect against the foreseeable risk of harm to Class Members from a data breach.

135.    Defendant's duty to use reasonable security measures required Defendant to reasonably protect confidential data from any intentional or unintentional use or disclosure.

136.    In addition, Defendant had a duty to employ reasonable security measures under Section 5 of the FTCA, 15 U.S.C. § 45, which prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair practice of failing to use reasonable measures to protect confidential data.

137.    Defendant's duty to use reasonable care in protecting confidential data arose not only as a result of the statutes and regulations described above, but also because Defendant are bound by industry standards to protect confidential PII.

138.    Defendant breached its duties, and thus was negligent, by failing to use reasonable measures to protect Class Members' PII. The specific negligent acts and omissions committed by Defendant include, but are not limited to, the following:

        a.    failing to adopt, implement, and maintain adequate security measures to safeguard Class Members' PII;

b.    failing to adequately monitor the security of their networks and systems;

c.    failing to have in place mitigation policies and procedures;

d.    allowing unauthorized access to Class Members' PII;

e.    failing to detect in a timely manner that Class Members' PII had been compromised; and

f.    failing to timely notify Class Members about the Data Breach so that they could take appropriate steps to mitigate the potential for identity theft and other damages.

139.    Defendant owed to Plaintiffs and Class Members a duty to notify them within a reasonable timeframe of any breach to the security of their PII. Defendant also owed a duty to timely and accurately disclose to Plaintiffs and Class Members the scope, nature, and occurrence of the Data Breach. This duty is required and necessary for Plaintiffs and Class Members to take appropriate measures to protect their PII, to be vigilant in the face of an increased risk of harm, and to take other necessary steps to mitigate the harm caused by the data breach.

140.    Plaintiffs and Class Members are also entitled to injunctive relief requiring Defendant to, *e.g.,* (i) strengthen their data security systems and monitoring procedures; (ii) submit to future annual audits of those systems and monitoring procedures; and (iii) continue to provide adequate credit monitoring to all Class Members.

141.    Defendant breached its duties to Plaintiffs and Class Members by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard Plaintiffs' and Class Members' PII.

142.    Defendant owed these duties to Plaintiffs and Class Members because they are members of a well-defined, foreseeable, and probable class of individuals whom Defendant knew or should have known would suffer injury-in-fact from Defendant's inadequate security protocols. Defendant actively sought and obtained Plaintiffs' and Class Members' PII.

143.    The risk that unauthorized persons would attempt to gain access to the PII and misuse it was foreseeable. Given that Defendant holds vast amounts of PII, it was inevitable that

1    unauthorized individuals would attempt to access Defendant's databases containing the PII—

2    whether by malware or otherwise.

3         144.    PII is highly valuable, and Defendant knew, or should have known, the risk in

4    obtaining, using, handling, emailing, and storing the PII of Plaintiffs and Class Members and the

5    importance of exercising reasonable care in handling it.

6         145.    Defendant breached its duties by failing to exercise reasonable care in supervising

7    their agents, contractors, vendors, and suppliers, and in handling and securing the PII of

8    Plaintiffs and Class Members—which actually and proximately caused the Data Breach and injured

9    Plaintiffs and Class Members.

10        146.    Defendant further breached its duties by failing to provide reasonably timely notice of

11   the Data Breach to Plaintiffs and Class Members, which actually and proximately caused and

12   exacerbated the harm from the Data Breach and Plaintiffs' and Class Members' injuries-in-fact. As

13   a direct and traceable result of Defendant's negligence and/or negligent supervision, Plaintiffs and

14   Class Members have suffered or will suffer damages, including monetary damages, increased risk of

15   future harm, embarrassment, humiliation, frustration, and emotional distress.

16        147.    Defendant's breach of its common-law duties to exercise reasonable care and their

17   failures and negligence actually and proximately caused Plaintiffs and Class Members actual,

18   tangible, injury-in-fact and damages, including, without limitation, the theft of their PII by

19   criminals, improper disclosure of their PII, lost benefit of their bargain, lost value of their PII, and

20   lost time and money incurred to mitigate and remediate the effects of the Data Breach that resulted

21   from and were caused by Defendant's negligence, which injury-in-fact and damages are ongoing,

22   imminent, immediate, and which they continue to face.

23                          **SECOND CAUSE OF ACTION**
                        **Breach of Third Party Beneficiary Contract**
24                        **(On behalf of Plaintiffs and the Class)**

25        148.    Plaintiffs repeat and re-allege paragraphs 1 through 128 of this Complaint and

26   incorporate them by reference herein.

27

28

149.    Upon information and belief, Defendant entered into virtually identical contracts with its clients to provide solutions, which included data security practices, procedures, and protocols sufficient to safeguard the PII that was to be entrusted to it.

150.    Such contracts were made expressly for the benefit of Plaintiffs and the Class, as it was their PII that Defendant agreed to receive and protect through its services. Thus, the benefit of collection and protection of the PII belonging to Plaintiffs and the Class was the direct and primary objective of the contracting parties, and Plaintiffs and Class Members were direct and express beneficiaries of such contracts.

151.    Defendant knew that if it were to breach these contracts with its clients, Plaintiffs and the Class would be harmed.

152.    Defendant breached its contracts with its clients and, as a result, Plaintiffs and Class Members were affected by this Data Breach when Defendant failed to use reasonable data security and/or business associate monitoring measures that could have prevented the Data Breach.

153.    As foreseen, Plaintiffs and the Class were harmed by Defendant's failure to use reasonable data security measures to securely store and protect the files in its care, including but not limited to, the continuous and substantial risk of harm through the loss of their PII.

154.    Accordingly, Plaintiffs and the Class are entitled to damages in an amount to be determined at trial, along with costs and attorneys' fees incurred in this action.

**THIRD CAUSE OF ACTION**
**Violation of the California Unfair Competition Law**
**[Cal. Bus. & Prof. Code § 17200, et seq. – Unlawful Business Practices]**
**(On Behalf of Plaintiffs and the Class)**

155.    Plaintiffs repeat and re-allege paragraphs 1 through 128 of this Complaint and incorporate them by reference herein.

156.    This count is brought by Plaintiffs on behalf of themselves and the putative Class.

157.    Defendant violated Cal. Bus. and Prof. Code § 17200, *et seq.*, by engaging in unlawful, unfair or fraudulent business acts and practices and unfair, deceptive, untrue or misleading

advertising that constitute acts of "unfair competition" as defined in Cal. Bus. Prof. Code § 17200 with respect to the services provided to the Class.

158.    Defendant engaged in unlawful acts and practices with respect to the services by establishing the sub-standard security practices and procedures described herein; by soliciting and collecting Plaintiffs' and Class Members' PII with knowledge that the information would not be adequately protected; and by storing Plaintiffs' and Class Members' PII in an unsecure electronic environment in violation of California's data breach statute, Cal. Civ. Code § 1798.81.5, which requires Defendant to take reasonable methods for safeguarding the PII of Plaintiffs and the Class Members.

159.    In addition, Defendant engaged in unlawful acts and practices by failing to disclose the Data Breach in a timely and accurate manner, contrary to the duties imposed by Cal. Civ. Code § 1798.82.

160.    As a direct and proximate result of Defendant's unlawful practices and acts, Plaintiffs and Class Members were injured and lost money or property, including but not limited to the price received by Defendant's for services, the loss of Plaintiffs' and Class Members' legally protected interest in the confidentiality and privacy of their PII, nominal damages, and additional losses as described herein.

161.    Defendant's knew or should have known that its computer systems and data security practices were inadequate to safeguard Plaintiffs' and Class Members' PII and that the risk of a data breach or theft was highly likely. Defendant's actions in engaging in the above-named unlawful practices and acts were negligent, knowing and willful, and/or wanton and reckless with respect to the rights of Plaintiffs and Class Members.

162.    Plaintiffs, on behalf of the Class, seek relief under Cal. Bus. & Prof. Code § 17200, et seq., including, but not limited to, restitution to Plaintiffs and Class Members of money or property that Defendant may have acquired by means of its unlawful, and unfair business practices, disgorgement of all profits accruing to Defendant because of its unlawful and unfair business practices, declaratory relief, attorneys' fees and costs (pursuant to Cal. Code Civ. Proc. § 1021.5),

1  and injunctive or other equitable relief.

2                                  **FOURTH CAUSE OF ACTION**
                      **Violation of the California Consumer Privacy Act ("CCPA")**
3                                       **Cal. Civ. Code § 1798.150**
                      **(On Behalf of Plaintiff Peralta and the California Subclass)**
4

5       163.    Plaintiff Peralta (for purposes of this cause of action, "Plaintiff") repeats and re-

6  alleges paragraphs 1 through 128 of this Complaint and incorporates them by reference herein.

7       164.    This count is brought by Plaintiff on behalf of himself and the putative California Sub-

8  class.

9       165.    Defendant violated California Civil Code § 1798.150 of the CCPA by failing to

10  implement and maintain reasonable security procedures and practices appropriate to the nature of the

11  information to protect the nonencrypted PII of Plaintiff and the California Sub-class. As a direct and

12  proximate result, Plaintiff and the California Sub-class's nonencrypted and nonredacted PII was

13  subject to unauthorized access and exfiltration, theft, or disclosure.

14      166.    Defendant is a "business" under the meaning of Civil Code § 1798.140 because

15  Defendant is a "corporation, association, or other legal entity that is organized or operated for the

16  profit or financial benefit of its shareholders or other owners" that "collects consumers' personal

17  information" and is active "in the State of California" and "had annual gross revenues in excess of

18  twenty-five million dollars ($25,000,000) in the preceding calendar year." Civil Code § 1798.140(d).

19      167.    Plaintiff and California Sub-class Members seek injunctive or other equitable relief to

20  ensure Defendant hereinafter adequately safeguards PII by implementing reasonable security

21  procedures and practices. Such relief is particularly important because Defendant continues to hold

22  PII, including Plaintiff's and California Sub-class Members' PII. Plaintiff and California Sub-class

23  Members have an interest in ensuring that their PII is reasonably protected, and Defendant has

24  demonstrated a pattern of failing to adequately safeguard this information.

25      168.    On December 23, 2024, pursuant to California Civil Code § 1798.150(b), Plaintiff

26  mailed a CCPA notice letter to Defendant, detailing the specific provisions of the CCPA that

27  Defendant has violated and continues to violate.

28

169.    As described herein, an actual controversy has arisen and now exists as to whether Defendant implemented and maintained reasonable security procedures and practices appropriate to the nature of the information so as to protect the personal information under the CCPA.

170.    A judicial determination of this issue is necessary and appropriate at this time under the circumstances to prevent further data breaches by Defendant.

**FIFTH CAUSE OF ACTION**
**Violation of the California Customer Records Act**
**Cal. Civ. Code § 1798.80, *et seq*.**
**(On Behalf of Plaintiff Peralta and the California Subclass)**

171.    Plaintiff Peralta (for purposes of this cause of action, "Plaintiff") repeats and re-alleges paragraphs 1 through 128 of this Complaint and incorporates them by reference herein.

172.    This count is brought by Plaintiff on behalf of himself and the putative California Sub-class.

173.    Under the California Customer Records Act, any "person or business that conducts business in California, and that owns or licenses computerized data that includes personal information" must "disclose any breach of the system following discovery or notification of the breach in the security of the data to any resident of California whose unencrypted personal information was, or is reasonably believed to have been, acquired by an unauthorized person." Cal. Civ. Code § 1798.82. The disclosure must "be made in the most expedient time possible and without unreasonable delay" but disclosure must occur "immediately following discovery [of the breach], if the personal information was, or is reasonably believed to have been, acquired by an unauthorized person." Id (emphasis added).

174.    The Data Breach constitutes a "breach of the security system" of Defendant.

175.    An unauthorized person acquired the personal, unencrypted information of California Plaintiffs and the California Sub-class.

176.    Defendant knew that an unauthorized person had acquired the personal, unencrypted information of Plaintiff and the California Sub-class but waited more than 60 days to notify them. Given the severity of the Data Breach, this was an unreasonable delay.

177.    Defendant's unreasonable delay prevented Plaintiff and the California Sub-class from taking appropriate measures from protecting themselves against harm.

178.    Because Plaintiff and California Sub-class Members were unable to protect themselves, they suffered incrementally increased damages that they would not have suffered with timelier notice.

179.    Plaintiff and California Sub-class Members are entitled to equitable relief and damages in an amount to be determined at trial.

**SIXTH CAUSE OF ACTION**
**Declaratory Judgment and Injunctive Relief**
**(On Behalf of Plaintiffs and the Class)**

180.    Plaintiffs repeat and re-allege paragraphs 1 through 128 of this Complaint and incorporate them by reference herein.

181.    Under the Declaratory Judgment Act, 28 U.S.C. §§ 2201, et seq., this Court is authorized to enter a judgment declaring the rights and legal relations of the parties and to grant further necessary relief. Furthermore, the Court has broad authority to restrain acts, such as those alleged herein, which are tortious and which violate the terms of the federal and state statutes described above.

182.    An actual controversy has arisen in the wake of the Data Breach at issue regarding Defendant's common law and other duties to act reasonably with respect to employing reasonable data security. Plaintiffs allege Defendant's actions in this respect were inadequate and unreasonable and, upon information and belief, remain inadequate and unreasonable. Additionally, Plaintiffs and the Class continue to suffer injury due to the continued and ongoing threat of new or additional fraud against them or on their accounts using the stolen data.

183.    Under its authority under the Declaratory Judgment Act, this Court should enter a judgment declaring, among other things, the following:

a.    Defendant owed, and continues to owe, a legal duty to employ reasonable data security to secure the PII it possesses, and to notify impacted individuals of the Data Breach under the common law and Section 5 of the FTCA;

b.    Defendant breached, and continues to breach, their duty by failing to employ reasonable measures to secure their customers' personal and financial information; and

c.    Defendant's breach of their legal duty continues to cause harm to Plaintiffs and the Class.

184.    The Court should also issue corresponding injunctive relief requiring Defendant to employ adequate security protocols consistent with industry standards to protect its customers' (i.e., Plaintiffs' and the Class') data.

185.    If an injunction is not issued, Plaintiffs and the Class will suffer irreparable injury and lack an adequate legal remedy in the event of another breach of Defendant's data systems. If another breach of Defendant's data systems occurs, Plaintiffs and the Class will not have an adequate remedy at law because many of the resulting injuries are not readily quantified in full and they will be forced to bring multiple lawsuits to rectify the same conduct. Simply put, monetary damages, while warranted to compensate Plaintiffs and the Class for their out-of-pocket and other damages that are legally quantifiable and provable, do not cover the full extent of injuries suffered by Plaintiffs and the Class, which include monetary damages that are not legally quantifiable or provable.

186.    The hardship to Plaintiffs and the Class if an injunction is not issued exceeds the hardship to Defendant if an injunction is issued.

187.    Issuance of the requested injunction will not disserve the public interest. To the contrary, such an injunction would benefit the public by preventing another data breach, thus eliminating the injuries that would result to Plaintiffs, the Class, and the public at large.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, on behalf of themselves and Class Members, request judgment against Defendant and that the Court grant the following:

A.    For an Order certifying the Class, and appointing Plaintiffs and their Counsel to represent the Class;

B.    For equitable relief enjoining Defendant from engaging in the wrongful conduct

1    complained of herein pertaining to the misuse and/or disclosure of the PII of Plaintiffs

2    and Class Members;

3    C.    For injunctive relief requested by Plaintiffs, including but not limited to, injunctive

4         and other equitable relief as is necessary to protect the interests of Plaintiffs and Class

5         Members, including but not limited to an order;

6         i.    prohibiting Defendant from engaging in the wrongful and unlawful

7              acts described herein;

8         ii.    requiring Defendant to protect, including through encryption, all data

9              collected through the course of its business in accordance with all

10             applicable regulations, industry standards, and federal, state or local

11             laws;

12        iii.   requiring Defendant to delete, destroy, and purge the personal

13             identifying information of Plaintiffs and Class Members unless

14             Defendant can provide to the Court reasonable justification for the

15             retention and use of such information when weighed against the

16             privacy interests of Plaintiffs and Class Members;

17        iv.   requiring Defendant to provide out-of-pocket expenses associated with

18             the prevention, detection, and recovery from identity theft, tax fraud,

19             and/or unauthorized use of their PII for Plaintiffs' and Class Members'

20             respective lifetimes;

21        v.    requiring Defendant to implement and maintain a comprehensive

22             Information Security Program designed to protect the confidentiality

23             and integrity of the PII of Plaintiffs and Class Members;

24        vi.   prohibiting Defendant from maintaining the PII of Plaintiffs and Class

25             Members on a cloud-based database;

26        vii.  requiring Defendant to engage independent third-party security

27             auditors/penetration testers as well as internal security personnel to

28

1    conduct testing, including simulated attacks, penetration tests, and

2    audits on Defendant's systems on a periodic basis, and ordering

3    Defendant to promptly correct any problems or issues detected by such

4    third-party security auditors;

5    viii.    requiring Defendant to engage independent third-party security

6    auditors and internal personnel to run automated security monitoring;

7    ix.    requiring Defendant to audit, test, and train its security personnel

8    regarding any new or modified procedures;

9    x.    requiring Defendant to segment data by, among other things, creating

10    firewalls and access controls so that if one area of Defendant's network

11    is compromised, hackers cannot gain access to other portions of

12    Defendant's systems;

13    xi.    requiring Defendant to conduct regular database scanning and securing

14    checks;

15    xii.    requiring Defendant to establish an information security training

16    program that includes at least annual information security training for

17    all employees, with additional training to be provided as appropriate

18    based upon the employees' respective responsibilities with handling

19    personal identifying information, as well as protecting the personal

20    identifying information of Plaintiffs and Class Members;

21    xiii.    requiring Defendant to routinely and continually conduct internal

22    training and education, and on an annual basis to inform internal

23    security personnel how to identify and contain a breach when it occurs

24    and what to do in response to a breach;

25    xiv.    requiring Defendant to implement a system of tests to assess its

26    respective employees' knowledge of the education programs discussed

27    in the preceding subparagraphs, as well as randomly and periodically

28

CLASS ACTION COMPLAINT
33

1    testing employees' compliance with Defendant's policies, programs,
2    and systems for protecting personal identifying information;

3    xv.    requiring Defendant to implement, maintain, regularly review, and
4    revise as necessary a threat management program designed to
5    appropriately monitor Defendant's information networks for threats,
6    both internal and external, and assess whether monitoring tools are
7    appropriately configured, tested, and updated;

8    xvi.    requiring Defendant to meaningfully educate all Class Members about
9    the threats that they face as a result of the loss of their confidential
10    personal identifying information to third parties, as well as the steps
11    affected individuals must take to protect themselves; and

12    xvii.    requiring Defendant to implement logging and monitoring programs
13    sufficient to track traffic to and from Defendant's servers; and for a
14    period of 10 years, appointing a qualified and independent third-party
15    assessor to conduct a SOC 2 Type 2 attestation on an annual basis to
16    evaluate Defendant's compliance with the terms of the Court's final
17    judgment, to provide such report to the Court and to counsel for the
18    class, and to report any deficiencies with compliance of the Court's
19    final judgment;

20    D.    For an award of damages, including actual, nominal, statutory, consequential, and
21    punitive damages, as allowed by law in an amount to be determined;

22    E.    For an award of attorneys' fees, costs, and litigation expenses, as allowed by law;

23    F.    For prejudgment interest on all amounts awarded; and

24    G.    Such other and further relief as this Court may deem just and proper.

25    **<u>JURY TRIAL DEMANDED</u>**

26    Plaintiffs hereby demand that this matter be tried before a jury.

27    Dated: February 5, 2025                     Respectfully Submitted,

28

1

2         By: /s/Andrew Shamis
             Andrew Shamis
3            Arizona Bar No. 037343
             ashamis@shamisgentile.com
4            **SHAMIS & GENTILE, P.A.**
             14 NE 1st Ave, Suite 705
5            Miami, FL 33132
             Telephone: (305) 479-2299

6
             Jeff Ostrow*
7            Kristen Lake Cardoso*
             **KOPELOWITZ OSTROW P.A.**
8            One W. Las Olas Blvd., Ste. 500
             Fort Lauderdale, FL 33301
9            Tel: (954) 990-2218
             cardoso@kolawyers.com

10
             *Attorneys for Plaintiffs and the Proposed Class*
11
             **pro hac vice* application forthcoming

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28